# THE STATE v. ROBERT B. MUNROE, Appellant.

Division Two, February 16, 1918.

1. **INSOLVENT PRIVATE BANK: Insolvency of Owner: Indictment.** An indictment charging that defendant as agent of a certain private bank received money on deposit, knowing that said bank was at the time insolvent and in failing circumstances, should charge the insolvency of the owner, and the evidence adduced and the instructions given should follow the indictment in that respect, and if the indictment does not charge that the owner of the private bank on said day was insolvent, in addition to charging that the bank itself was insolvent, no conviction can stand.

2. ———: ———: **Legislative Construction of Statute.** The amendment in 1887 of the existing statute making it larceny for "any president, director, manager, cashier or other officer of any banking institution" to receive or consent to the receiving into such

bank any deposit of money or other valuable thing, after such officer or agent had knowledge of its insolvency, by inserting after said quoted words the words "or the owner, agent or manager of any private bank or banking institution," was a legislative construction that the said existing statute was not applicable to a private bank.

3. ———: ———: **Present Statute.** The present statute (Sec. 4585, R. S. 1909), enacted in 1895 (Laws 1895, p. 158), specifically requires that the agent or cashier or other officer of a private bank must have had knowledge that "the owner or owners of any such private bank are insolvent or in failing circumstances" before he can be convicted of larceny for receiving money on deposit in such private bank.

4. ———: ———: **Prima-Facie Evidence of Insolvency.** If the private bank had not failed at the time the money was received on deposit, but closed the next day on account of the death of the owner on that day, no prima-facie evidence of its insolvency can arise from the fact that it closed, but the insolvency of the owner is a matter of proof. [Distinguishing State v. Salmon, 216 Mo. l. c. 525.]

5. ———: **Indictment, Proof and Instruction.** Not only must the indictment for receiving deposits into an insolvent private bank charge that the owner or owners were insolvent at the time the deposit was received, but the proof must likewise establish that fact, and the jury must be instructed to so find before they can convict the accused.

6. ———: **Agency of Accused.** It is not necessary in order to convict a defendant under the statute making it a felony to receive money on deposit in an insolvent private bank, that he should have had the ultimate authority in the management of the bank's business or financial policy, or that his acts or delinquencies should have been the cause, or one of the causes, of the bank's insolvency; but if the proof shows that he was in charge of the bank with the knowledge and apparent consent of the owner, or that he was entrusted by the owner with the duty of receiving deposits, or that he was, with the apparent knowledge and consent of the owner, permitted to act for the owner in receiving deposits, he was the agent of the owner within the purview of the statute, and if the other things required by the statute are proven, he may be convicted.

7. ———: **Evidence of Other Deposits.** Evidence of divers deposits made by other persons in the bank in question about the same time the one for which defendant is on trial was made, is not competent evidence, even as shedding light on defendant's intent or as establishing his agency, and its admission is error.

State v. Munroe.

8. **INDICTMENT: Variance: Draft: Money: Different Counts.** The statute makes it just as great an offense to receive "other valuable things" on deposit in an insolvent bank, as it does to receive real money; and prudence always suggests that, where the valuable thing while not money represents money, the charge be made in two or more counts, and thus avoid the danger of a fatal variance; such, for instance, as might arise (though not decided) where the thing deposited was a draft and the indictment charged only that the deposit consisted of money.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Deering*, Judge.

REVERSED AND REMANDED.

*Clyde Williams, Adrian Steele, J. L. Hornsby, Paul Bakewell* and *Major & Revelle* for appellant.

(1) There was a failure of proof or a fatal variance, the charge in the indictment being that defendant received $800 in lawful money of the United States, when the evidence showed he received a draft for $800 drawn upon a bank in the State of Louisiana. State v. Mispagel, 207 Mo. 557; State v. Castleton, 255 Mo. 201; State v. Rosefelt, 184 S. W. 904; State v. Salmon, 216 Mo. 521; State v. Shapiro, 216 Mo. 359; State v. Plant, 209 Mo. 307; State v. Ballard, 104 Mo. 634; Lory v. People, 229 Ill. 268; Goodheu v. People, 94 Ill. 37; People v. Cronkite, 260 Ill. 438; Commonwealth v. Howe, 132 Mass. 250; Commonwealth v. Woods, 142 Mass. 450; State v. Quackenbush, 108 N. Y. 953; Carr v. State, 104 Ala. 43; United States v. Greve, 65 Fed. 488; United States v. Smith, 152 Fed. 542; Bishop on Statutory Crimes (3 Ed.), sec. 346; 1 Mitchie on Banks and Banking, p. 427; Wharton's Criminal Evidence, sec. 122; Balbach v. Frelinghuysen, 15 Fed. 675; United States v. Hess, 124 U. S. 486; Evans v. United States, 153 U. S. 587. (2) There was no evidence that defendant was such an agent of the Jefferson County Bank as to make him criminally liable as contemplated by Sec. 4585, R. S. 1909, and defendant's peremptory instructions should have been given. Sec. 4585, R. S. 1909; 31 Cyc. 1386; 31 Cyc. 1206; State v. Sarlls, 34 N. E. 1130; Gillett on Crim. Law, sec. 410, p.

344; State v. Sattley, 131 Mo. 491. (3) The court erred in admitting evidence which was incompetent and prejudicial to defendant: (a), Notes which are not shown to be the assets of the bank; (b), Other and different specific deposits from the one which was charged in the indictment; (c), Reports of the Bank Commissioner and correspondence between the Bank Commissioner and O. M. Munroe, of which defendant had no knowledge; and (d), Statements made by defendant some time after the death of O. M. Munroe and based upon information acquired by defendant as administrator. State v. Burlingame, 146 Mo. 226. (4) Under the provisions of section 4585, if the prosecution is against the owner, agent or manager of a private bank, such person must have knowledge, at the time of the receiving of the deposits, not of the insolvency or failing circumstances of the private bank, with its segregated assets, but, as the statute specifically provides, must have such knowledge of the insolvency or failing circumstances of the owner of such private bank. It is quite plain that the court submitted the case to the jury on the wrong theory and through wrong instructions, to-wit, that the defendant's knowledge at the time of the receipt of the deposit in question, was of the insolvency or failing circumstances of the private bank with its segregated assets, instead of his knowledge of the insolvency or failing circumstances, at the time, of the owner, and as the statute plainly states.

*Frank W. McAllister,* Attorney-General and *S. E. Skelley,* Assistant Attorney-General, for the State.

(1) This case should not be reversed because of alleged variance between the allegations of the indictment and the proof. (a) Under an indictment alleging that defendant, as the agent and manager of a private banking institution, received a "certain deposit of money, to-wit, eight hundred dollars in lawful money of the United States," knowing that said institution was then insolvent and in failing circumstances, proof that defendant so received, crediting the depositor's account with

the amount thereof, a bank draft drawn on a foreign bank, is sufficient to sustain said allegation. Michie on Banks and Banking, p. 427; State v. Booth, 186 S. W. 1019; State v. Salmon, 216 Mo. 520; State v. Quackenbush, 98 Minn. 515; Parrish v. Commonwealth, 136 Ky. 377. (b) Acceptance of a draft for deposit, and the crediting of the depositor's account with the amount thereof, is equivalent to the receipt of said amount of money. State v. Booth, 186 S. W. 1019; State v. Salmon, 216 Mo. 520; Burton v. United States, 196 U. S. 302; Ellis v. State, 138 Wis. 513. (2) The court did not err in overruling defendant's peremptory instruction in the nature of a demurrer to the evidence at the close of the State's case. State v. Warner, 74 Mo. 85; State v. Pollard, 174 Mo. 614; State v. Wertz, 191 Mo. 578; State v. Swain, 239 Mo. 728; State v. Stewart, 116 Mo. App. 330. (3) The court did not err in admitting the following evidence because incompetent and prejudicial to the defendant. (a) Notes which are not shown to be the assets of the bank. The notes were shown to have been found among assets of the bank, and registered on the records of the bank. Said evidence was admissible. Michie on Banks and Banking, p. 437; Parrish v. Commonwealth, 136 Ky. 377. (b) Other and different specific deposits from the one which was charged in the indictment. The purpose for which they were admitted was limited and defined by State's instruction. Said evidence not sufficiently prejudicial to constitute reversible error. (c) Report of the Bank Commissioner and correspondence between the Bank Commissioner and O. M. Munroe, of which defendant had no knowledge. Defendant was present and assisted in the preparation of the report. The report was competent. Michie on Banks and Banking, p. 436; State v. Salmon, 216 Mo. 466. The correspondence between the Bank Commissioner and O. M. Munroe concerned said report.

FARIS, J.—Defendant was tried in the circuit court of Jefferson County, upon an indictment charging him with having, as agent of a certain private bank, re-

ceived a deposit of money knowing that said bank was at the time insolvent and in failing circumstances. Being convicted upon this charge he has, after the usual motions, appealed.

Such of the facts, as are necessary to an understanding of the points raised upon this appeal, run substantially thus: On and prior to the 9th day of April, 1915, one Otis M. Munroe, the father of defendant, was the owner of a private bank in the town of De Soto, known as the Jefferson County Bank. Defendant was and had been for some years employed in this bank, and had assumed the title of assistant cashier. The deposit, for the receipt of which defendant was convicted, was made on the 1st day of April, 1915, and consisted of a draft for the sum of $800, drawn by a building-and-loan association of Shreveport, Louisiana, upon a bank situate in the latter State. The above draft was on the date last mentioned deposited by Sol Hohenthal, to the credit of his sister, Gertrude Hohenthal.

At the time of the making of this deposit, but two persons were employed in this bank; namely, defendant, who seems to have been acting as receiving teller, and cashier, and one Harry Brown, who seems to have been the bookkeeper. The father of the defendant, who, as stated, was the owner of this bank, was at the time lying ill in a hospital in the city of St. Louis. This owner had been seriously ill for something more than a year, and had been unable during that entire period to be in the bank or to give much personal attention to the affairs thereof; though the proof shows that in most instances wherein loans of any magnitude were sought to be made with the Jefferson County Bank, Otis M. Munroe, was constantly consulted and had the deciding voice; but the proof is abundant that defendant was in full charge of this bank in all other respects, and that he received deposits, paid out money to depositors, and made and passed on numerous small loans.

This bank continued in business without any overt financial difficulties until the said 9th day of April, 1915; on which date Otis M. Munroe died. Upon the death of

the latter, and solely on account thereof, this bank was closed. Much evidence came in upon the question of the solvency or insolvency of the bank itself, and the proof tends to show that on the day at which the bank closed for the reason stated, it was (its segregated assets alone regarded) actually insolvent. There is no proof touching whether Otis M. Munroe, the owner of this bank, was or was not solvent on the first day of April, 1915, though there is proof in the record that he claimed, shortly prior to his death, to be worth some $44,000 more than his debts. Upon the trial of the case no attention seems to have been paid, by either side, as to the financial condition of Otis M. Munroe; both sides confining the proof adduced by them respectively to the condition of the bank itself with reference to the latter's solvency or insolvency, as compared to the actual segregated assets thereof which were used solely in the banking business. Upon the trial much proof was offered that defendant in addition to receiving the deposit for which he was herein convicted, had received about the same time from other persons divers similar deposits.

The indictment upon which this prosecution was bottomed is strenuously assaulted, and it therefore becomes very pertinent in our discussion of the case. Omitting signature and merely formal parts, all of which are conventional, and none of which is attacked, this indictment read thus:

"The grand jurors of the State of Missouri, impaneled, sworn and charged to inquire within and for the County of Jefferson, and State aforesaid, upon their oath present and charge that Robert B. Munroe, on the 1st day of April, 1915, at the County of Jefferson, in the State of Missouri, being then and there the agent and manager of a certain private banking institution, known as the Jefferson County Bank, doing business at De Soto, in said county and State, a certain deposit of money, to-wit, eight hundred dollars, in lawful money of the United States, the money and property of one Gertrude Hohenthal, of the value of eight hundred dollars, unlawfully and feloniously did take, have and receive

on deposit in said Jefferson County Bank, after he, the said Robert B. Munroe, had knowledge of the fact, and well knew that the said Jefferson County Bank was then and there insolvent and in failing circumstances, and so the said Robert B. Munroe, the money aforesaid, to-wit, eight hundred dollars, the money and property of the said Gertrude Hohenthal, in manner and form aforesaid, unlawfully and feloniously did steal, take and carry away; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State."

Such other facts as shall become pertinent to the points which we find it necessary to discuss will be set out by us in connection with that discussion.

I. It is contended by defendant that this prosecution proceeded from the beginning upon an erroneous theory. That is to say, that, since the Jefferson County Bank was not an incorporated bank, but a private bank wholly owned by Otis M. Munroe, the indictment should have charged the insolvency of said Munroe the owner, and the evidence adduced and the instructions offered should have followed the indictment in this behalf. We think it too plain for argument that this point is well taken.

*Indictment.*

The section of the statutes (Sec. 4585, R. S. 1909) upon which this prosecution is bottomed was first enacted in 1877. [Laws 1877, p. 239.] It then made it larceny for "any president, director, manager, cashier, or other officer of any banking institution" to receive or consent to the receiving into such bank any deposit of money or other valuable thing, after such officer or agent of the bank had knowledge of the insolvency of "such bank or banking institution." In 1887, this statute was amended by inserting therein the words "or the owner, agent or manager or any private bank or banking institution." [Laws 1887, p. 162.] This amendment was a legislative construction that the section prior to the amendment was not applicable to a private bank.

In 1895 the entire section was repealed and a new section enacted in lieu thereof. [Laws 1895, p. 158.] This latter enactment is still the law upon the subject. [Sec. 4585; R. S. 1909.] As enacted in 1895, this statute contained (and yet and now contain) the significant language which we italicise for emphasis, thus making the law under which defendant was convicted read thus:

"If any president, director, manager, cashier or other officer of any banking institution, or the owner, agent or manager of any private bank or banking institution, or the president, vice-president, secretary, treasurer, director or agent of any trust company or institution doing business in this State, shall receive or assent to the reception of any deposit of money or other valuable thing in such bank or banking institution or trust company or institution, or if any such officer, owner or agent of such bank or banking institution, or if any president, vice-president, secretary, treasurer, director or agent of such trust company or institution, shall create or assent to the creation of any debts or indebtedness, in consideration or by reason of which indebtedness any money or valuable property shall be received into such bank or banking institution or trust company or institution, after he shall have had knowledge of the fact that such banking institution or trust company or institution, *or the owner or owners of any such private bank, is insolvent or in failing circumstances,* he shall be deemed guilty of larceny, and upon conviction thereof shall be punished in the manner and to the same extent as is provided by law for stealing the same amount of money deposited, or valuable thing: Provided, that the failure of any such bank or banking institution or trust company or institution shall be prima-facie evidence of knowledge on the part of any such officer or person that the same was insolvent or in failing circumstances when the money or property was received on deposit." [Sec. 4585, R. S. 1909; Laws 1895, p. 158.]

In the face of this language it is idle to contend that defendant can be convicted without charging in the indictment and without showing the fact by the evi-

dence offered upon the trial, that *"the owner"* of this private bank *"was insolvent or in failing circumstances,"* when defendant received the deposit here in question.

The case of State v. Salmon, 216 Mo. 1. c. 525, is urged upon our attention as laying down a contrary rule. We think the two cases are easily to be distinguished. There the learned jurist who wrote the case was dealing with the *proviso* to the above-quoted section which, relating to a matter wholly evidentiary, makes the failure of any such bank or banking institution prima-facie evidence of the insolvency thereof. In the Salmon case *the bank had failed.* In the case at bar, the Jefferson County Bank had been closed solely on account of the death of the owner thereof. Whether that owner was insolvent, therefore became a matter of proof. There was no statutory presumption about it.

It is perhaps unfortunate that in a somewhat loose discussion of the point, Judge Fox followed, in the Salmon case, the older case of State v. Buck, 120 Mo. 479, which latter case *was decided in 1894, before the present statute was amended* so as to require that the insolvency of the "owner or owners" of a private bank at the time of receiving a deposit must be shown as a condition precedent to conviction. Judge Fox ruled that even in the case of a private bank, the fact of the failure thereof should (just as the letter of the statute provides) be held to be prima-facie proof that a private bank, as well as an incorporated bank, was insolvent when the deposit was received. Absent the fact of failure, as here, we apprehend no such ruling would have been made. Certainly, no such ruling would have been warranted.

No one can read our present statute upon this subject without concluding that the indictment for receiving deposits into an insolvent private bank must charge that the owner or owners thereof were insolvent at the time of receiving such deposit. Likewise, the proof must show this fact, and the jury must be instructed to so find, before they are authorized to convict the accused. That the statute may authorize the triers of fact to pre-

sume such insolvency from the fact that the bank has failed is an element which is not in this case, and therefore one which we shall permit to rest with the cases already adjudged (State v. Salmon, supra; State v. Buck, supra), till we shall meet it again face to face. It follows that the indictment herein is bad, for that it failed to charge that defendant had knowledge of the fact that Otis M. Munroe, the owner of the private bank, was insolvent and in failing circumstances when defendant received into said bank the deposit in question, and that the instructions which followed the error of the indictment in this behalf are likewise erroneous. Of course, it also follows, as an inevitable deduction, that there was a failure of proof upon this necessary and essential question.

II. Since, if the State is so advised, this case may be retried, it may be well to say that if the proof shall show that defendant was in charge of this bank, with the knowledge and apparent consent of the owner thereof, or that he was entrusted by the owner thereof Agent of with the duty of receiving deposits, or that he Private Bank. was, with the apparent knowledge and consent of the owner, permitted to act for the latter in receiving deposits, he was the agent of the owner within the purview of the statute under discussion, and other things which are made requisite by that statute, being proven, he may be convicted. It is not necessary that defendant should have had the ultimate authority in the management of this bank, that is, that he should, as to all matters, have had full authority to control the business or financial policy of the bank; nor that his acts or delinquencies should have been the cause, or one of the causes of the bank's insolvency, if it was insolvent. The statute is fairly plain, and it requires no such showing; neither does the reason of the thing, nor the evil sought to be prevented by this statute, require such a showing. We think there was ample evidence that defendant was the agent of the owner of the bank, within the purview of section 4585, supra, when he received the

deposit in question. The instruction given by the court of its own motion was more than fair to defendant, and he has no ground of complaint for that the court *nisi* refused the instructions defining agency, which he asked.

III. It is contended that the court erred in admitting evidence of divers deposits made by other persons, in the bank in question, about the same time as that one was made for which defendant was upon his trial. This has been held by this court to be error. [State v. Burlingame, 146 Mo. l. c. 226.] We see no reason to change the ruling upon this question, since it can throw no light upon defendant's intent, nor is it of any value in demonstrating the agency of defendant, as what we say above makes manifest.

Other Deposits.

IV. Defendant also complains that a fatal variance arose upon the trial, in that while the indictment charged that defendant received a "deposit of money, to-wit, eight hundred dollars, in lawful money of the United States," the evidence conclusively showed that the thing of value actually received by defendant was a draft for the sum of eight hundred dollars drawn by a building-and-loan association of Louisiana, upon a bank in Shreveport, in the latter State. It will be noted that the statute under which this prosecution was had (Sec. 4585, R. S. 1909) makes it just as great an·offense to receive "other valuable things" as it does to receive real money. In fact, the Legislature seems to have had in mind that a vast majority of the banking business of this world is done with valuable paper other than money, and to have prophetically provided for just the identical contingency that arose in this case. There is nothing in a case of doubt to prevent the procuring of an indictment, or the filing of an information, in two counts; one of which may charge that money was received, while the other shall aptly charge the real character of the "valuable thing" which was received by the defendant. It is well-nigh incomprehensible why the prosecuting attorneys in preparing informations do not,

Variance.

when in doubt as to the nature of the valuable papers forming the subject of a criminal offense and which, while not money yet represent money, charge the offense in two or more counts, and thus once for all obviate the danger of a fatal variance. With this observation, we will leave this question open, since the case must in any event be reversed for other errors, which we have already pointed out. Observing further, however, that it is not nearly as difficult and troublesome to file an information in two counts, as it is for an appellate court to justify a wholly unnecessary variance. The late-ruled cases apposite here on this question fully show this. [Cf. State v. Mispagel, 207 Mo. 557; State v. Salmon, 216 Mo. l. c. 521; State v. Plant, 209 Mo. 307; State v. Bouslog, 266 Mo. 73; State v. Booth, 186 S. W. 1019.]

Many other matters are urged upon our attention, but since all such are things in which either there is no merit or things which will not happen upon a new trial, we need not take up space in discussing them.

For the errors noted, let the case be reversed and remanded for a new trial not inconsistent with what we have herein written.

It is so ordered. All concur.