THE STATE v. W. T. McCLURE, Appellant.—31 S. W. (2d) 39.

Court en Banc, September 3, 1930.

1230

*Davis & Ashby* for appellant.

*Stratton Shartel,* Attorney-General, and *G. C. Weatherby,* Assistant Attorney-General, for respondent.

WHITE, J.—An indictment returned at the May term of the Daviess County Circuit Court charged that on or about April 15, 1925, defendant, as president of the Commercial Bank of Jamesport in said county, feloniously assented to the receiving for deposit the sum of $4007.55, the property of J. T. Bell, while said bank was in failing circumstances, of which fact the defendant had knowledge.

On change of venue to Livingston County the case was tried, and September 24, 1927, a verdict returned finding defendant guilty of "receiving deposits" as charged in the indictment.

For a statement of the facts and determination of several points involved, I cannot do better than to adopt and quote from the divisional opinion written by Cooley, C., as follows:

I. "The Commercial Bank of Jamesport was an incorporated bank located and doing business at Jamesport, Daviess County, Missouri. Defendant had been its cashier from about 1916 to 1921, when he became president, which latter official position he held thereafter until the bank was closed by resolution of its board of directors and placed in the hands of the State Finance Department on April 15, 1925. After defendant became president he had charge of the loans and discounts and was in the general and active management of the affairs of the bank and familiar with its resources and liabilities and its condition.

"On Monday, April 13, 1925, a bank examiner, Mr. Shelby, appeared and began an examination of the bank which continued until the evening of April 15. On the fifteenth, Mr. Shelby having discovered conditions that appeared to him unsatisfactory, sent for the then Commissioner of Finance, Mr. Zuendt who, with a deputy, Mr. Todd, came to Jamesport and that night a conference was held with the board of directors, including defendant. It was then that the board adopted the resolution to close the bank and turn it over to the Finance Department. The resolution was as follows:

" 'State of Missouri, Department of Finance. City of Jefferson.

" 'Jamesport, Missouri. April 15th, 1925. Board of directors of the Commercial Bank of Jamesport, Missouri, being in session after full discussion of the financial condition of the above mentioned bank decided to place same in the hands of the Commissioner of Finance of the State of Missouri. W. T. McClure, president. James Guerin, Secretary.'

"The Commissioner of Finance thereupon placed a deputy commissioner in charge and proceeded to liquidate the bank, which liquidation was still in process at the time of the trial, September 20-24, 1927.

"On April 14, 1925, while the examination of the bank was in progress, one J. T. Bell came to the bank and made the deposit upon which this prosecution is based. The deposit consisted of two items, a check or draft for $4007, drawn on the First National Bank of Maryville, Missouri, by the Gillam-Jackson Loan & Trust Company of Maryville, and payable to the order of J. T. Bell, and a check of Montgomery-Ward & Company for fifty-five cents. No attention was paid to the latter check in the trial and it will not be further noticed. Defendant personally received the deposit and made this entry in Bell's pass-book: 'April 14, dept. $4007.55.' Bell did not deposit any actual money.

"There was evidence from which the jury might find that the bank was in failing circumstances at the time the deposit was made and had been for a considerable time previously and that defendant knew of this condition; that there was some shortage in the amount of bills receivable and bonds left for safekeeping which the bank's records showed it should have on hand, as well as a large amount of insolvent paper, and that it carried on its books real estate other than its banking house at a valuation of over $74,000, which was in fact of very little value; also that it owed something over $30,000, represented by notes to another bank and to certain individuals, which were not shown as liabilities in its daily statements nor, as the State's evidence tended to show, by its records.

"1. In the trial court the defendant, by motion to quash the indictment, challenged the sufficiency of that instrument which reads as follows:

"'The Grand Jurors of the State of Missouri, summoned from the body of the county of Daviess, being duly impaneled, charged and sworn as such at the May term of the Circuit Court of Daviess County, Missouri, A. D. 1928, on their oaths present that W. T. McClure, on or about the 15th day of April, 1925, at the County of Daviess, in the State of Missouri, being then and there the President of the Commercial Bank of Jamesport, Jamesport, Missouri, a corporation duly organized and existing under the laws of the State of Missouri, the same being a banking institution doing business in said State, a certain deposit of money, to-wit, four thousand seven dollars and fifty-five cents, lawful money of the United States of the value of four thousand seven dollars and fifty-five cents, the money and property of J. T. Bell, unlawfully and feloniously did then and there assent to the taking, having and receiving on deposit in said Commercial Bank of Jamesport, a banking institution as aforesaid, doing business in said State, which said

Commercial Bank of Jamesport was then and there in failing circumstances, after he, the said W. T. McClure, president as aforesaid, had knowledge of the fact and well knew that said Commercial Bank of Jamesport was then and there in failing circumstances, and so the said W. T. McClure, the money aforesaid, to-wit, four thousand seven dollars and fifty-five cents of the value of four thousand seven dollars and fifty-five cents, the money and property of the said J. T. Bell, in manner and form aforesaid, unlawfully and feloniously did steal, take and carry away against the peace and dignity of the State.'

"In his motion to quash, defendant assigns many reasons for claiming the indictment to be invalid. He presses that contention here on two grounds, viz., 1st, that it does not allege that the Commercial Bank was at the time the deposit was made doing business in Daviess County; 2d, that it does not charge that the money was deposited in said Commercial Bank and 'does not charge that the appellant assented to the taking, having and receiving on deposit the money of Mr. Bell.' Defendant cites State v. Buck, 108 Mo. 622, 18 S. W. 1113; State v. Buck, 120 Mo. 479, 25 S. W. 573, and State v. Sanford (Mo.), 297 S. W. 73.

"Relative to the first ground mentioned it is stated in each of the three cases cited that the bank in question was doing business in the county in which the venue was laid, while in the instant case the allegation is that the Commercial Bank was a banking institution doing business in this State. Defendant concedes that courts will take judicial notice that Jamesport is in Daviess County. The indictment charges that defendant 'at the County of Daviess, in the State of Missouri, being *then and there* the President of the Commercial Bank of Jamesport, Jamesport, Missouri. . . . a certain deposit of money . . . did *then and there* assent to the taking, having and receiving on deposit in said Commercial Bank of Jamesport, . . . which said Commercial Bank of Jamesport was *then and there* in failing circumstances,' etc. It is evident that it sufficiently appears from the indictment that the bank was doing business in Daviess County and that the offense is charged to have been committed in that county.

"The second objection urged is also untenable. The allegation of the indictment respecting the reception of the deposit with the assent of appellant is rather awkwardly worded, as was said by the court of a similarly worded allegation in the indictment in State v. Sanford, supra. The object in the sentence is placed before the verb. Transposing the language so as to make the object follow the verb the charging part of the indictment would read that defendant 'unlawfully and feloniously did then and there assent to the taking, having and

receiving on deposit in said Commercial Bank of Jamesport a certain deposit of money . . . the money and property of J. T. Bell.' That is clearly what the indictment means and says. In this respect it follows the form used in both the Buck cases referred to above. The further objection that it is not alleged from *whom* the deposit was received is likewise answered by the rulings in the three cases above mentioned. Such allegation did not appear in the indictment in the Buck cases and the indictments were held good and that ruling was approved in the Sanford case. On the authority of the cases mentioned the indictment must be held sufficient.

"2. After this case reached the Livingston Circuit Court defendant filed a plea in abatement, which was overruled, and he now assigns that ruling as error. The plea in abatement alleged and defendant urges here that the transcript certified to the Livingston County Circuit Court by the Clerk of the Circuit Court of Daviess County did not show that the grand jury which returned the indictment was ordered by the court and therefore it does not appear that it was a legally constituted grand jury with 'jurisdiction to return said indictment,' wherefore the Circuit Court of Livingston County was without jurisdiction of the cause. Defendant introduced in evidence in support of his plea in abatement only the transcript of the Clerk of the Daviess County Circuit Court with said clerk's certificate thereto, certifying that the foregoing was a true and complete transcript of the records and proceedings had in the circuit court in said county (Daviess) in a certain cause wherein the State of Missouri is plaintiff and W. T. McClure is defendant, as fully as the same appears of record and on file in my office.' The transcript begins thus:

" 'State of Missouri, } ss
" 'County of Daviess, }

" 'Pleas before the Circuit Court of Daviess County, at a term begun and holden in the City of Gallatin, county and State aforesaid, on the 3rd day of May, 1926, before the Honorable John L. Schmitz, Judge of the Thirty-Sixth Judicial Circuit of the State of Missouri.

" 'State of Missouri
v.                                                                        No. 2515
" 'W. T. McClure

" 'Be it remembered, That heretofore to-wit, on the 26th day of May, 1926, it being the Eleventh day of the regular May term, 1926, the following proceedings were had and made of record, to-wit:
" 'IN RE GRAND JURY:
" ' 'Comes now the Grand Jurors of the State of Missouri, for the body of the County of Daviess, in a body, into open Court, and

through their Foreman presents to the Court, among other Indictments, Nos. 17, 18 & 19, duly signed by the Prosecuting Attorney of said Daviess County, and endorsed by the Foreman of said Grand Jury as true bills, which said Indictment No. 17 is in words and figures the following to-wit:'

"Then follows a copy of the indictment with a transcript of subsequent proceedings in that court. The order for a grand jury does not appear.

"Section 28, Article II, of the State Constitution provides that no grand jury shall be convened except upon an order of a judge of a court having the power to try and determine felonies. Section 6614, Revised Statutes 1919, provides in detail the manner in which this constitutional requirement shall be carried out. The statute provides that when the judge deems it necessary to cause a grand jury to be convened he shall make an order 'and if in vacation, file the same with the clerk of said court, and in term time he shall cause the same to be spread upon the records of said court.'

"A grand jury may be and often is ordered by the judge of the court before the beginning of the term. The question presented then is, does the clerk's certificate above referred to amount to affirmative proof that there was no order for a grand jury made by the judge either in vacation or term time? We think not. Section 3983, Revised Statutes 1919, of the Code of Criminal Procedure, requires that when an order is made for the removal of 'any cause' (on change of venue) the clerk 'shall make out a full transcript of the record and proceedings in the cause, including the order of removal, the petition therefor, if any, and the recognizance of the defendant and of all witnesses, and shall transmit the same, duly certified under the seal of the court, to the clerk of the court to which the removal is ordered.' Grand juries are not usually convened for the investigation of any particular case or supposed offense, and when convened constitute an arm or agency of the court through which it performs its functions relative to the enforcement of law generally. The statute, Section 3983 supra, emphasizes certain things by expressly requiring their inclusion, but we think the requirement that the clerk 'shall make out a full transcript of the record and proceedings in the cause' may fairly be construed to mean, and has been generally understood in practice to mean, the record made and proceedings had in that particular cause, and not to include record entries pertaining to the organization of the court for the transaction of its business generally.

"Defendant cites in support of his contention two cases, State v. Buck, 108 Mo. 622, supra, and State v. Gowdy, 307 Mo. 352, 270 S. W. 310, neither of which sustains his contention, and we have not been able to find a case directly in point. In State v. Buck, supra, the transcript did not show any order changing the

venue. That order has been uniformly held necessary to confer jurisdiction upon the court to which a cause is sent on change of venue and was so held in that case. See also State v. Decker, 217 Mo. 315, 324, 116 S. W. 1096, in which the petition for change of venue, which the statute expressly says shall be included, was omitted and it was nevertheless held, since the order changing the venue and the reasons therefor fully appeared, that jurisdiction was vested in the court to which the venue was changed. In the Gowdy case the judge, while court was in session, orally directed the clerk to enter an order for a grand jury, whereupon a special *venire facias* was at once issued and served and the grand jurors thus summoned were sworn. All this happened on December 1st at the November term of the court, and on December 10th the grand jury returned the indictment the validity of which was questioned on the ground that the order calling a grand jury was not of record when the indictment was returned. The clerk failed to enter of record the court's order for a grand jury made on December 1st until December 14th, when it was entered as of the day it was actually given. The term had not adjourned. This court, giving defendant the benefit of his contention that an order of record was necessary, but without deciding that an oral order would be insufficient, held that the trial court had control of its judgments and proceedings during the term and properly permitted or caused the order made on December 1st to be entered as of that date so that the record properly stood as though the order had been recorded on December 1st. It will be seen that the decision gives no support to defendant's contention on the point here in controversy.

"Absent affirmative proof that there was no order for a grand jury the presumption must be indulged that it was ordered as required by law, especially in view of the recognition and use of it by the court and the court's acceptance of indictments returned by it. If such recognition and use of the grand jury are not tantamount to an order for the convening of that body and do not constitute actual evidence that the judge ordered its convening—questions we merely suggest without deciding—they at least strengthen the presumption of lawful action by the court that must be indulged absent proof to the contrary. We think the record in this case does not destroy that presumption and that the plea in abatement was properly overruled.

"3. In his motion for new trial defendant charges error in the overruling of his motion for discharge for that he was not brought to trial by the end of the third term after the indictment was returned. He does not assign that ruling as error in this court. From an inspection of the record it is apparent that there is no merit in this contention and we assume defendant has abandoned it."

Also as follows:

"5. Defendant contends that there was a fatal variance between allegation and proof, the indictment charging that the deposit was of money while the proof showed the deposit of a draft. The solution of the question thus raised, it must be confessed, is not without difficulty. The same question was raised, but not decided, in State v. Munroe, 273 Mo. 341, 201 S. W. 100. In that case, as in this, the charge was that money had been deposited and the proof showed a deposit of a draft drawn on a bank other than the one in which the deposit was made and of which the defendant Munroe was an officer. The judgment was reversed and the cause remanded on other grounds. On the point now under consideration the court expressly left the question open, at the same time giving a strong suggestion to prosecuting attorneys that in case of doubt indictments and informations should be drawn in two counts, one charging that money was received and the other aptly charging the real character of the 'valuable thing' deposited.

"Defendant cites, among others, decisions of this court in embezzlement cases which hold that proof of the embezzlement of a check will not support a charge of embezzlement of money. The cases cited also hold, however, that while it is embezzlement of the check, and not money, if the person charged had no authority to collect the check, yet if he did have authority to collect and collected it and converted the money to his own use, he embezzled the money, and in such case would be properly charged with embezzling the money. [State v. Ross, 312 Mo. 510, 279 S. W. 411, and cases cited.]

"In so far as there is any analogy between embezzlement cases and the case before us the decisions in embezzlement cases are against rather than in favor of defendant on the point under consideration, because the draft in question was indorsed unrestrictedly by the payee and delivered to defendant, not only that it might be collected but that the money should be retained by the bank.

"In State v. Salmon, 216 Mo. 466, 115 S. W. 1106, the indictment charged assent to the reception of a deposit of money in the Salmon & Salmon Bank. The proof was that the depositor brought to the bank a check drawn upon *that bank* and at his request was paid part of the amount in cash and given credit for the balance as a deposit, the amount thus deposited being the deposit charged in the indictment as a deposit of money. This court denied the defendant's contention that there was a failure of proof of the offense charged, saying in substance (216 Mo. l. c. 520-521) that the check was drawn on the depositary bank and when the payee presented it to that bank for payment and received part in cash and had the balance placed to his credit as a deposit it was in contemplation of law the payment to him of the amount of the check and

in effect the same as though the amount of the check had been paid to him and he had retained the sum he desired and returned the balance for deposit. The court summed up its discussion of this point as follows:

" 'We shall not undertake to review all the authorities to which our attention has been directed. We have carefully examined them and find that they by no means settle the proposition now under discussion. The law upon this proposition is well stated by Morse on Banks and Banking (4 Ed.), Volume two, section 569, where it is said: ''When a check is presented for deposit drawn on the depositary bank, the bank may refuse to pay it, or take it conditionally by express agreement, or by usage, if such a one exists, as in California; but otherwise, if it pays the money, or gives credit to the depositor, the transaction is closed between the bank and the depositor, unless the paper proves not to be genuine, or there is fraud on the part of the depositor. *The giving of credit is practically and legally the same as paying the money to the depositor, and receiving the cash again on deposit.* The intent of the parties must govern, and presenting a check on the bank, with a pass book in which the receiving teller notes the amount of the check, is sufficient indication of intent to deposit, and to receive as cash.'' ' ''

And:

''The entry made in Mr. Bell's pass-book indicates that the deposit was treated as a deposit of money. It is true the pass-book had printed on the first page thereof the following 'All items received by this bank for deposit are credited subject to payment, reserving the right to charge back any item not paid,' which defendant read in evidence. The bank could waive that right and accept the deposit as cash. And in any event the only contingency upon which the right to charge back would have arisen under the stipulation printed in the pass-book, viz., non-payment by the drawee bank, did not happen, for the draft was paid. When the deposit was made a deposit ticket was made out, presumably by defendant since it is evident from Bell's testimony that Bell did not make it, showing a deposit by Bell of $4007.55. The bank's ledger sheet showing Bell's account of that date gives the account credit for a deposit of that amount. The draft was remitted that day by the Commercial Bank to its correspondent bank at Kansas City, which either on that day or on the 15th, at any rate while the Commercial Bank was still open, credited the Commercial Bank's account with the amount of the draft and the sum thus credited appears upon the Commercial Bank's records as part of its money, on deposit with the correspondent bank at the time it closed on April 15, and passed as part of its assets into the hands of the Commissioner of Finance. There was no evidence that anything was said by the depositor or defendant at the time the deposit was made as to Bell's right to

check against the deposit or as to prior dealings in that respect other than as shown by the conduct of the parties. Bell had been a customer of the bank for a number of years and on this occasion simply walked into the bank, presented the draft and his pass-book, was handed a pen by the defendant and told to 'sign it over,' which he did by unrestricted indorsement, the entry as of cash was made in his pass-book and he left. But he evidently understood that he had the right to check against the deposit, for he at once went to a real estate office to which a note of his had been sent for collection and gave a check on the Commercial Bank which, however, was sent to the payee at another place and did not reach the Commercial Bank prior to its closing, hence was not paid. We think these facts make at least a prima-facie showing that the check was deposited and received as cash. No effort was made by defendant to show at the trial that the check was taken by the bank for collection or otherwise than as a general deposit except the bare offer in evidence of the printed matter above set out appearing in the pass-book.

''Under these circumstances can it be said that defendant was deprived of any right by reason of the variance complained of? We cannot see that he was misled in any way or deprived of any defense he might otherwise have made by reason of the fact that the deposit was described in the indictment as money instead of a draft. Section 3907, Revised Statutes 1919, provides that a variance between the statement in the indictment and the evidence offered in proof thereof 'in the name or description of any matter or thing whatsoever therein named or described' shall not be deemed ground for an acquittal of the defendant unless the trial court shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant. The trial court evidently did not regard the variance as prejudicial in this case.

''The trial court's discretion under the above section is subject to review, and if in the opinion of this court it was abused and the variance should have been allowed we may reverse because thereof. [State v. Small, 272 Mo. 507, 516, 199 S. W. 127.] We are of the opinion that on the facts of this record defendant was not prejudiced by the variance complained of and this assignment of error is disallowed.

''6. Defendant complains of error in State's instruction numbered 9, in that it assumes the 'failure' of the bank. It is sufficient to say of this assignment that defendant fell into the same alleged error in Instruction E, given at his request, which contains the same assumption and he is therefore in no position to complain on that score.

''Defendant also assigns error in the refusal of his requested instructions H and K. By Instruction H he sought to have the jury

1244

told that criminal intent is an essential element of the offense and that if defendant did not have knowledge that the bank was insolvent there was no criminal intent and defendant should be acquitted. The instruction as requested might have been understood by the jury to mean that it was necessary to find that defendant had a specific criminal intent to defraud the depositor, which is not required. The statute forbids the act of receiving or assenting to the reception of the deposit with knowledge that the bank is in failing circumstances. There must of course be an intentional doing of the prohibited act with knowledge of the bank's insolvency. But a specific intent to defraud by doing that act is not necessary. [3 R. C. L. p. 492, sec. 119.] Another instruction given at defendant's request required the jury to find that defendant had knowledge that the bank was in failing circumstances.

"Defendant's Instruction K states in substance that if the jury found that defendant had good reason to believe and did believe that the bank held sufficient solvent paper and sureties with which to pay all its indebtedness he should be acquitted. This instruction might well have been given since such belief on his part would negative knowledge of insolvency. He could not know that the bank was insolvent and yet believe that it was solvent. But in Instruction B, given at defendant's request, the jury was told that defendant could not be convicted unless the jury found beyond a reasonable doubt that he knew at the time the deposit was received that the bank was in failing circumstances and that the jury in determining whether or not he had such knowledge should take into consideration all facts and circumstances in evidence. In view of the giving of Instruction B we think the refusal of Instruction K was not reversible error."

Other assignments of error we now consider.

II. It is claimed that the verdict is not responsive to the charge because the indictment charges the defendant with having *assented to the reception* of a deposit, while the verdict finds him guilty of *receiving* the deposit.

In another way it is asserted that the defendant was found guilty of a crime not charged. This on the theory that Section 3365, Revised Statutes 1919, charges two offenses, one *receiving* and the other *assenting* to the reception of a deposit under the circumstances mentioned.

The parts of that section relevant to the question are as follows:

"*Bank Officer Receiving Deposits, When a Felony.*—If any president, director, manager, cashier or other officer of any banking institution, or the owner, agent or manager of any private bank or banking institution, or the president, vice president, secretary, treasurer, director or agent of any trust company or institution doing

business in this State, shall receive or assent to the reception of any deposit of money or other valuable thing in such bank or banking institution or trust company or institution . . . after he shall have had knowledge of the fact that such banking institution or trust company or institution, or the owner or owners of any such private bank, is insolvent or in failing circumstances, he shall be deemed guilty of larceny, and upon conviction thereof shall be punished in the manner and to the same extent as is provided by law for stealing the same amount of money deposited, or valuable thing.''

The indictment set out above avers that defendant ''did then and there assent to the taking, having and receiving on deposit,'' etc., and ''in manner and form aforesaid unlawfully and feloniously did steal, take and carry away,'' etc.

The verdict is as follows:

''We, the jury in the above entitled cause, find the defendant guilty of grand larceny by receiving deposits, knowing the bank to be in failing circumstances, as charged in the indictment, and assess his punishment at two years in the penitentiary.

''M. W. Blair, foreman.''

First, error is claimed in the form of the verdict because it finds the defendant guilty of grand larceny while the statute provides only that upon conviction he shall be *punished* as provided by law for grand larceny. Defendant quotes from State v. Burgess, 268 Mo. 1. c. 418-419. It cannot be said that judgment in that case was reversed on that ground; other errors appeared which necessarily worked a reversal. We cannot understand how the defendant is harmed by the form of the verdict. He was found guilty of larceny ''as charged.'' The indictment charges that ''in manner and form aforesaid'' (by assenting to the reception of the deposit) the defendant ''did steal, take and carry away,'' etc. It is in those acts so charged that the jury found him guilty of larceny, of which offense the statute says ''he shall be deemed guilty.'' That is the ''manner and form'' in which larceny was committed.

Thus the verdict, as to that point, is strictly responsive to the charge and is not out of harmony with the statute.

But the lack of responsiveness is claimed in finding that defendant ''received'' the deposit instead of ''assenting to the reception.'' The lesser would necessarily be included in the greater. If all A is B, all B would not necessarily be A. To assent to the reception of the deposit and receiving the deposit, both include the assent. The assent to the reception is the inclusive circle, and the reception of the deposit is a segment of that circle. The jury could not have found the defendant received the deposit without also finding that he assented to the reception of the deposit. Therefore the verdict necessarily found the defendant guilty of the very act of which he was charged, and it was in strict accord with the evidence.

If two offenses of different grades with different punishments affixed were defined there might be error if the jury found the defendant guilty of the offense of which he was not charged, because it would have its effect in determining the punishment which they inflict. But in this case the same punishment is fixed for either act. At most it was a variance which the trial court did not find material nor prejudicial. [Sec. 3907, R. S. 1919.]

Section 3365 does not describe or condemn two offenses, but only one, and describes different methods of committing the same offense. It says: "If any president, director, manager, etc., shall receive or assent to the reception of any deposit . . . after he shall have knowledge of the fact that such banking institution . . . is insolvent or in failing circumstances, he shall be deemed guilty of larceny, and upon conviction thereof he shall be punished in the same manner as provided by law for stealing the same amount of money."

Notice, this is directed at persons in authority and management of the bank. The president, manager or cashier would be guilty of no crime in assenting to the reception of a deposit under such circumstances, unless he was in a position to control that reception and cause the deposit to be refused. If a teller should consent to the president receiving a deposit, he would not be guilty, because he could not control it. But if the president consents to the teller receiving a deposit he is as guilty as if he received it himself, because the teller is under his direct control. What one does by another he does by himself. If the president should *order* a teller to receive a deposit, the reception would be the president's own act. The statute merely goes further and makes *assent* the same as an *order* and the president's act. The criminal act is the reception of the deposit under the conditions described, and the officer responsible for that reception is the person guilty. The variations in which the act may be committed, whether the officer receives it himself or permits his clerk to receive it, leaves the offense exactly the same act. There is nothing in the language of the section which distinguishes one from the other. The act of the president in receiving the deposit and making out the deposit slip is the same in effect as his standing by and assenting to his subordinate receiving it and making out the deposit slip. These are mere details in different form of the reception of the deposit. Thus at worst the evidence was a mere immaterial variance, and the verdict followed the evidence.

A Nevada case is cited where it was held that the word "receive" did not mean "assent to reception." There it appears the statute condemned only the reception of a deposit and technically assenting to the reception would not be an actual reception. It was not made so by that statute. Our statute is intended to be broader and cover a reception in any form, either by assenting to the subordinate's act

or the officer doing the act himself. The defendant cites also the case of State v. Hinton, 299 Mo. 507, where the evidence showed that the defendant was charged with secreting property with intent to embezzle it, and that was the evidence. But the jury found that the defendant actually embezzled the property. That was not only contrary to the averment, but contrary to the fact. He was not charged with embezzlement and had not committed embezzlement. There were clearly two distinct offenses, and the jury found him guilty of something of which he could not have been guilty. Other cases cited might be distinguished in the same way.

Some cases are cited from the courts of appeals which hold that this section creates two separate offenses, but they are not well reasoned. In State v. Sanford, 297 S. W. 73, it is said, l. c. 75, that Section 3365 denounces two offenses. That, however, seems an inadvertent *obiter* statement, not pertinent to any issue. I think that is true of every case where that section is said to state two offenses.

Many statutes have been held to describe how one offense may be committed in several different ways in language very similar in its purport to the language of this section. These mostly arise when it was claimed that two crimes were charged in the same count of an information or indictment, and it was held the statute merely defined two or more different ways of committing the same offense. [State v. Lando, 300 S. W. 767, l. c. 769; State v. Brown, 317 Mo. l. c. 366; State v. Bunch, 307 Mo. l. c. 415; State v. Spano, 320 Mo. 280, 6 S. W. (2d) l. c. 850; State v. Murphy, 47 Mo. l. c. 275.] The most that defendant can claim is an immaterial variance. The verdict therefore would not be fatal because it is in conformity to the evidence.

III. Appellant claims that the trial court erred in giving Instruction 10, on the credibility of the witnesses. The instruction, after telling the jury that they are the sole judges of the credibility of witnesses and of the weight and value to be given their testimony, proceeds:

"In determining as to the credit you will give to a witness, and the weight and value you will attach to a witness's testimony, you should take into consideration the conduct and appearance of the witness . . . " etc.

Then follow the usual features listed in such an instruction affecting the credibility of the witness. The objection of the appellant is the use of the word "should" instead of *may* in directing what the jury should consider. Appellant cites a case from the Court of Appeals and argues that the word "should" does not leave the jury free to determine the credibility of witnesses; that they are controlled by the court as to the weight they should give to the testimony.

The instruction is in the form approved by this court in numerous cases. In Crews v. Wilson, 312 Mo. l. c. 649, the word "should" is

used in such an instruction. In Esstman v. United Railways Co., 232 S. W. 1. c. 728, the instruction on the credibility of witnesses told the jury that they "*will*" take into consideration the matters mentioned. In State v. Hamilton, 304 Mo. 1. c. 27, the word "will" was used. In Wright v. Kansas City, 187 Mo. 1. c. 689, the word "will" was used in such an instruction.

It is the duty of the jury to consider *all* the evidence introduced in a case affecting any feature of the case which is for their determination. As judges of the credibility of witnesses they should take into consideration every element which affects that credibility. They are not at liberty to leave out of such consideration any one of those elements. If it is proper to instruct them at all on the credibility of witnesses, then the instruction should direct them to consider all the evidence which affects their credibility. They may reject such evidence as they think unworthy of belief, but they cannot reach such conclusion unless they do *consider* it.

Instruction 10 concludes as follows:

"All these facts being taken into account with all other facts and circumstances given in evidence, it is your province to give to each witness such credit and the testimony of each witness such value and weight as you deem proper. If upon a consideration of all the evidence you conclude that any witness has sworn falsely as to any material matter involved in a trial, you may reject or treat as untrue the whole or any part of such witness's testimony."

We cannot understand how the jury would feel otherwise than perfectly free to determine the credibility of a witness according to their best judgment.

IV. Appellant also assigns error to the testimony of Mr. A. J. Place who was offered as a witness by the State. The objection in appellant's Points and Authorities is that Mr. Place was not compe-tent to testify as to the values of certain personal property and real estate held by the bank, because it was based on facts and circumstances occurring long after the making of the deposit which appellant is charged with receiving. In the motion for new trial the objection is a little different. It states that Place was not qualified to give an opinion as to the makers of the notes, or as to the value of the real and personal property, and that all such testimony was erroneous; that it was a conclusion not based upon his knowledge and experience in the value of personal and real property. Place lived at Gallatin. He was with the Finance Department of the State and was liquidating officer of the bank. He testified to the amount of assets in his hands. After he was placed in charge he proceeded to make collections of such notes as were collectible. His testimony objected to is in relation to the notes and the solvency of the parties who signed them. He said that he obtained all the information he could regarding the notes;

that as a result of his investigations he became familiar with the financial standing of the signers and their ability to pay; that he knew some of them already; that he had lived and done banking business in the neighborhood; that he was cashier of the First National Bank of Gallatin for a number of years; that he was familiar with the values of real estate in and around Daviess County. After this general qualification he was asked in regard to a note of Ada M. Royston of $4,459.51; whether from his investigation he found that the note was collectible. The objection was that he would be testifying only to a conclusion and that the conditions of the bank at the time he made his investigation, and that his investigation applied to a condition existing long after he took charge of the bank, and after the time it was necessary to prove that it was in failing condition. The court in passing upon the objection said that since the witness had the matters in charge, made the investigation and arrived at a conclusion, he had a right to state it; that it was a matter of cross-examination as to how thorough was his examination. The only hearsay evidence complained of was where he said the note of Ada M. Royston was in the hands of an administratrix at the time and the administratrix reported that the estate probably would not pay out fifty per cent. Of course any statement made by the administratrix to the witness was hearsay, but the witness further said that he had a general knowledge of the solvency of the parties. He then mentioned that some of the property was in a farm; that he knew in a general way what property was in the estate. We think the hearsay evidence was harmless because the witness had sufficient knowledge from other investigation.

As to the objection that his investigation covered a time subsequent to the time when it was necessary for the State to prove the bank was in a failing condition, the evidence was competent. The indictment charged that the defendant assented to the reception of a deposit on the 15th day of April, 1925, and that was the day on which the bank closed. The bank was put into the charge of the Finance Department of the State of Missouri, and the investigation of the witness followed closely upon that. The evidence, then, of the condition of the assets and the solvency of any debtor to the bank at the time the examination was made would be some evidence as to the condition of affairs and the solvency of a debtor at the time that the deposit was received. That was for the jury to determine from all the facts. In this case the witness had lived long in the neighborhood and knew values of real estate and personal property in that vicinity; he was actually acquainted with many of the persons whose notes were under consideration.

A further objection to his testimony in relation to one note, a note of Lent Campbell for $1144, was that the witness gave his opinion of the insolvency of the maker of the note because he was in bankruptcy. We do not find any such conclusion in the record. The wit-

ness mentioned that the estate of the maker was in bankruptcy at the time, but did not give that as a reason for his conclusion that the maker was insolvent. His conclusions resulted from his investigations of that and other notes.

The appellant claims error in the admission of testimony of C. C. Conrad who swore that he had left $15,700 worth of bonds for safe-keeping in the bank; that he entrusted his bonds to the appellant and the appellant converted them. Therefore it permitted the testimony of the commission of another crime than the one charged in the indictment. No such error as that is claimed in the motion for new trial. The error assigned there is that the evidence in that respect did not tend to prove solvency or insolvency of the bank at the time. We think as against the objection urged in the motion the evidence was competent.

The appellant further says:

"This error was multiplied by the prosecuting attorney in his closing argument."

We do not find in the record any objection to any part of the closing argument of the prosecuting attorney nor any mention of it.

It is further complained that the court erred in permitting the cross-examination of defendant on matters not inquired about in chief. We find on the pages cited by appellant in the record that objection was made to certain parts of defendant's cross-examination, but we do not find that any exception was preserved to the ruling of the court in permitting such testimony.

We find no reversible error in the record. The judgment accordingly is affirmed. All concur, except *Walker, J.,* absent.