IN THE MATTER OF CONTEMPT PROCEEDINGS AGAINST
JOSEPH SCHWARTZ.

Argued February 5, 1946—Decided April 25, 1946.

For the appellant, *William Elmer Brown, Jr. (Charles S. Moore,* of counsel).

For the respondent, *Lewis P. Scott,* Prosecutor of the Pleas, and *David R. Brone,* First Assistant Prosecutor of the Pleas.

The opinion of the court was delivered by

COLIE, J. This appeal brings up for review a judgment of the Supreme Court affirming a judgment of the Atlantic County Court of Oyer and Terminer which adjudged Joseph Schwartz guilty of contempt of court "by reason of his refusal to answer certain questions propounded to him on the seventeenth day of November, 1943, in the presence of the October Term, 1943, Grand Jury in and for the County of Atlantic."

Schwartz had been a member of the grand jury at the May term, 1943, and had produced before it certain papers having to do with an unlawful activity, commonly known as "num-

bers." The succeeding grand jury caused Schwartz to be served with a subpœna to appear before it "to give evidence" and to bring with him any papers in his possession concerning any violation of the criminal law. He obeyed the mandate of the subpœna by appearing and as will hereinafter be shown no point is made of a failure to bring with him "any documentary information or other papers" as called for by the subpœna. While testifying before the grand jury Mr. Schwartz was asked certain questions and what then transpired was as follows:

"Q. Mr. Schwartz, the grand jury has requested your appearance here to-day in order that we again can ask about the number slips, which you had in your possession on or about October 5th. My question is from whom did you get those slips? A. I have no statement.

"Q. I am asking you now from whom did you get those slips? A. I refuse to state.

"Q. You also stated one time at least that certain information had come to your knowledge concerning the operation of the law enforcement agencies in the city and county from certain city and county employees, whose names at that time you refused to give because they might lose their jobs. I ask for the names of those city and county employees. A. I not only said they might lose their jobs, but it was given to me with the distinct understanding that I would not reveal the source and for that reason I refuse to answer that question.

"Q. I would like to admonish you, Mr. Schwartz, this grand jury has a right to have that answer legally and you have a perfect right to give their names. I assure you this grand jury would not reveal their names, and they would not, lose their jobs. I ask again for those names. A. I am very sorry I will not give it to you. I have not been relieved from my promise not to reveal their names."

Thereafter a rule to show cause issued out of the Court of Oyer and Terminer directing Mr. Schwartz to show cause why he should not be adjudged in contempt of the grand jury for refusing to answer the specific questions hereinabove set forth. On the adjourned date of the rule to show cause, testimony was taken and in due course the Court of Oyer and Ter-

miner adjudged Mr. Schwartz guilty of contempt of the grand jury, sentenced him to five days in the county jail and then suspended the sentence.

In 1917 the legislature enacted chapter 37 which for the first time in this state established a statutory definition of contempt of court. It is illuminating to read the title as it appears in laws 1917, page 71, "An act concerning contempt of court and *restricting* and defining the jurisdiction of the courts of this state with respect thereto." (Italics mine.) The first section read as follows:

"No power of any court in this state to punish contempt' shall be construed to extend to any case except the misbehavior of any person in its actual presence, the misbehavior of any officer of said court in his official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness or other person, to any lawful writ, process, order, rule, decree, or command of the said court."

With the adoption of the Revision of 1937 the phraseology was slightly changed so that the statute *R. S.* 2:15–1 now reads:

"The power of any court of this state to punish for contempt shall not be construed to extend to any case except the:

a. Misbehavior of any person in the actual presence of the court;

b. Misbehavior of any officer of the court in his official transactions; and

c. Disobedience or resistance by any court officer, or by any party, juror, witness or other person to any lawful writ, process, order, rule, decree or command of the court."

It seems to have been recognized by both the Court of Oyer and Terminer and the Supreme Court that the contempt, if any, arose out of subsection "c" and we agree that neither subsection "a" nor subsection "b" is applicable to the present situation. The problem resolves itself into the query as to whether in refusing to answer the questions put to him, Mr. Schwartz disobeyed or resisted "any lawful writ, process, order, rule, decree or command of the court." The only writ or process in this case is the writ of subpœna commanding Mr. Schwartz "to be and appear before the Grand Jury * * *

to give evidence on the part of the state." This command Mr. Schwartz fulfilled when he appeared at the time and place named in the subpœna. *Epstein* v. *American Hammered Piston Ring Co.,* 95 *N. J. L.* 391. The cited case was a civil as distinguished from a criminal proceeding but we know of no distinction arising from that fact so far as the effect of a *subpœna ad testificandum* is concerned. Having found that there was no disobedience or resistance to any writ or process we must look to the episode of November 17th, 1943, to ascertain what, if any, "order, rule, decree or command" Mr. Schwartz may have disobeyed or resisted. There was none and consequently he was not in contempt since there was no act of his that can be fairly said to fall within the scope of *R. S.* 2 :15–1, subdivision "c." In the Epstein case, *supra,* the Supreme Court said: "The obvious difficulty of enforcing compliance with the legislative intent in the situation is due to the absence of a court order, in the first instance, or the propounding by examining counsel of certain specific questions, which upon the witness' refusal to answer may be submitted to the court, and after argument *pro* and *con,* as to the legal relevancy of the same, an order may be made, which, if *contemned,* may present the basis for a rule to show cause." In *Backel* v. *Linn,* 104 *Id.* 243, the Supreme Court held that a witness cannot be adjudged in contempt until there has been a refusal to answer some question which the witness has been specifically directed by the court to answer.

We have examined the federal statute relative to contempt of court and consider that the inclusion of the phrase "or so near thereto as to obstruct the administration of justice" imports into that legislation something not suggested in *R. S.* 2 :15–1 and therefore we think the federal cases relied upon by the respondent have no applicability in this case.

The judgment under review is reversed, with costs.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Parker, Bodine, Heher, Colie, Oliphant, Wells, Rafferty, Dill, Freund, McGeehan, JJ. 12.