STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JOHN C. HAINES, DEFENDANT-APPELLANT.

Argued May 23, 1955—Decided June 20, 1955.

552

Mr. *Samuel P. Orlando* argued the cause for the appellant.

*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, argued the cause for the respondent.

The opinion of the court was delivered by

VANDERBILT, C. J.  This is an appeal from the judgment of the Burlington County Court convicting the defendant of the crime of false swearing.  The defendant appealed to the Appellate Division of the Superior Court and we certified the appeal on our own motion while it was pending there.

1. The defendant was indicted and tried on a charge that he had sworn falsely when he gave certain testimony to the grand jury which later indicted him.  Both before the trial and during the course of the trial the court denied several motions to dismiss the indictment on the grounds that the grand jury which indicted the defendant had no legal existence and that it had no power to indict the defendant for false swearing.  The question as to the power of the grand jury in question to indict the defendant will be first considered.

The grand jury of Burlington County for the second stated session of the September 1951 term was inducted into office on January 3, 1952.  Its original and normal term of 20 weeks expired on May 6, 1952.  On April 4, 1952, within its original term, the grand jury was specially charged by the assignment judge "concerning alleged violations of the gambling laws in Burlington County and misconduct in office of certain public officials in connection therewith."  When it became apparent to the grand jury that it could not complete its investigation before the expiration of its term, the grand jury through its foreman petitioned the assignment judge for the entry of an order pursuant to *Rule* 2:4–8 (Now *R. R.* 3:3–10) continuing the term of the grand jury for a period of three months beyond the expiration of the time it would ordinarily have ceased to function.  On May 2, 1952 the assignment judge, after referring to the substance of his special charge as quoted above, made an order that

"the term of the Second Stated Session, September Term, 1951, Grand Jury now sitting in and for the County of Burlington be

and the same is hereby continued for a period of three months from the 6th day of May, 1952, when said Grand Jury would ordinarily cease to function, and

It is further Ordered that during the continuation of the term as herein provided the said Grand Jury shall have the same power to act in relation to the aforesaid incompleted matters as if the term for which it was originally inducted into office had not expired."

Subsequently, on the successive presentation of three similar petitions to the assignment judge, he extended the term of the grand jury ultimately to May 6, 1953.

On March 20, 1953, during the last period of the grand jury's extended term, the defendant who was then the municipal judge of the Town of Mansfield but not a member of the bar, appeared before the grand jury in question and gave testimony, and on April 16, 1953 it presented an indictment against him in four counts, alleging that the answers given to some questions put to the defendant were false and charging him with violation of *N. J. S.* 2A:131–4. At the trial held about a year and a half later the first two counts were eliminated because no evidence was produced to support them. The third count charged that the negative answers given by the defendant to the questions whether he had ever received any money from one George Page, whether he had ever had any discussion with Page concerning Trooper John Reese, and the latter's receiving money for protection purposes, whether he had ever had any conversation with Page concerning Trooper Skok, and whether he had any conversation with Page concerning the operation of a floating crap game in Burlington County, were all false. The fourth count charged that the negative answer given by the defendant to the question whether he knew one Joseph Girgenti was also false.

The defendant here was one of 17 persons separately indicted for the crime of false swearing before this continued grand jury. After the indictments were presented against these other persons some of them moved before the County Court to dismiss the respective indictments against them and a similar motion was made on behalf of the defendant before the assignment judge, but by agreement the parties did not

argue the motion and stipulated to become bound by the decision made by the county judge on the motions in the other cases. The County Court denied the motions in the other cases, and the persons who had moved before him sought leave to appeal to the Appellate Division of the Superior Court, which denied such leave in *State v. Peterman*, 29 *N. J. Super.* 236 (*App. Div.* 1953).

The first point of argument by the defendant seeks to show that the grand jury that indicted him did not legally exist. The defendant contends that at common law the life of a grand jury ceased with the expiration of the term of court for which it was summoned and that the term of service of a grand jury could only be continued beyond that time if authorized by statute. He attempts to build up the contention that the continuation of a grand jury after its normal expiration is an act which enlarges the power and authority of that body, *i. e.*, an act creating additional rights and therefore a matter of substantive law. In doing so he is thus attempting to add weight to his later contention that the rule-making power of the Supreme Court did not include the power to make rules governing substantive matters, an argument which has never been questioned, *Winberry v. Salisbury*, 5 *N. J.* 240 (1950), and that therefore the *Rule* 2:4–8 (now *R. R.* 3:3–10) was invalid. The only case that he cites on this point is *State v. Davis*, 107 *N. J. L.* 199 (*Sup. Ct.* 1930), which held that the statute providing for the selection of the grand jurors did not authorize the Court of Oyer and Terminer, or even a justice of the former Supreme Court, to continue in office a grand jury empaneled for a specified term after that term had expired and a new grand jury had been empaneled. He recognizes that in 1939 statutes were passed authorizing such extensions, which became *N. J. S. A.* 2:88–26, 27 and 28. He says, however, when *Title* 2 was revised in January 1952, *N. J. S. A.* 2:88–26, 27 and 28, *supra*, were not reenacted and therefore we are without statutory authority to continue the existence of a grand jury after the expiration of its term. He denies that the *Constitution of* 1947, *Art.* VI, *Sec.* II, *par.* 3, giving the

Supreme Court the power to make rules governing the administration, practice and procedure in the courts, *Winberry v. Salisbury*, 5 *N. J.* 240 (1950), *supra*, covers the power in issue, because the grand jury, he contends, is not part of the courts intended to be so controlled. The authorities, however, all do not bear him out.

The question reduces itself to whether the grand jury is part of the court. Of this it seems there is no doubt. In *In re Schwartz*, 133 *N. J. L.* 79, 84–85 (*Sup. Ct.* 1945), reversed on other grounds 134 *N. J. L.* 267 (*E. & A.* 1946), the court of last resort approved the expression of the law "that the grand jury is an arm of the court, the proceedings by it are to be regarded as proceedings in the court, and that contempts in the presence of the grand jury are to be treated as taking place in the presence of the court." In *O'Regan v. Schermerhorn*, 25 *N. J. Misc.* 1, 19–20 (*Sup. Ct.* 1946), Supreme Court Commissioner, later Mr. Justice Ackerson, after citing many authorities, said:

"The grand jury, at common law, is an arm of the court and acts for the court under which it is organized, and its proceedings are regarded as proceedings in the court. * * * Its members are officers of the court and exercise functions of a judicial nature and its proceedings are judicial. * * *"

The conclusion that "The grand jury is an arm of the court—a judicial body—and its members are officers of the court," was reiterated in *In re Jeck*, 26 *N. J. Super.* 514, 519 (*App. Div.* 1953), certification denied 13 *N. J.* 429 (1953). *In re Camden County Grand Jury*, 10 *N. J.* 23, 64 (1952); *United States v. Smyth*, 104 *F. Supp.* 283, 291 (*D. C. D. Cal.* 1952); *Application of United Electrical Radio & M. Workers*, 111 *F. Supp.* 858 (*D. C. D. N. Y.* 1953); *Application of Iaconi*, 120 *F. Supp.* 589 (*D. C. D. Mass.* 1954); *Hitzelberger v. State*, 173 *Md.* 435, 196 *A.* 288 (*Ct. App.* 1938); *Commonwealth v. McNary*, 246 *Mass.* 46, 140 *N. E.* 255, 256, 29 *A. L. R.* 483 (*Sup. Jud. Ct.* 1923); *People v. Trieber*, 163 *P. 2d* 492, 497 (*Cal. App.* 1945), subsequent opinion 28 *Cal. 2d* 657, 171 *P. 2d* 1 (1946); *State ex rel. Hall v. Bur-*

ney, 229 *Mo. App.* 759, 84 *S. W. 2d* 659, 664 (*Ct. App.* 1935);
*Fryer v. State,* 146 *Ala.* 4, 41 *So.* 172, 173 (*Sup. Ct.* 1906);
*State v. McClure,* 325 *Mo.* 1228, 31 *S. W. 2d* 39, 42 (*Sup.
Ct.* 1930); *People v. Naughton,* 7 *Abb. Prac., N. S.,* 421,
423 (*N. Y. O. & T.* 1870); *People v. Duff,* 65 *How. Prac.*
365, 369 (*N. Y. O. & T.* 1883). *Cf. People v. Sweeney,* 213
*N. Y.* 37, 106 *N. E.* 913, 916 (*Ct. App.* 1914); *People v.
Sexton,* 187 *N. Y.* 495, 80 *N. E.* 396, 402 (*Ct. App.* 1907).

The defendant cites no authority for his contention
that the extension of the time of a grand jury is a matter of
substance rather than of procedure, and his argument that
the grant of such power to the courts in 1939 was substantive,
*N. J. S. A.* 2:88–26, 27 and 28, *supra,* and the failure to
reenact it in passing *Title 2A* in 1952 stripped the courts of
their power to extend the time of a grand jury, flies in the
face of common knowledge of what the Legislature was doing.
In repealing *Titles* 2 and 3 and enacting *Titles 2A* and *3A*
the Legislature was stripping the statute book of procedural
matters. As we said in *State v. Otis Elevator Co.,* 12 *N. J.* 1,
18 (1953):

"Sensing the undesirability of the comingling of substantive and
procedural law in *Title* 2 of the *Revised Statutes* dealing with the
administration of civil and criminal justice and in *Title* 3 dealing
with the administration of estates, the Legislature in June 1950 ap-
pointed an Advisory Committee on the Revision of Statutes (*L.* 1950,
*c.* 171) to revise these two titles  *  *  *  and to delete the pro-
cedural matter therein, and on December 5, 1951 it enacted the
recommendations of its Advisory Committee as *Titles* 2A and 3A
of the *Revised Statutes* (*L.* 1951, *cc.* 344, 345)."

In 1953 the procedural provisions in the other 56 titles on the
statute book were deleted by the Legislature, *chapters* 4
through 57, *Laws of* 1953, and thereupon this court revised
its *Rules of Court* effective September 9, 1953, including
among many others, *R. R.* 3:3–10, in question here, providing
for the continuance of terms of a grand jury. In promul-
gating its *Revised Rules* this court said:

"By far the bulk of the amendments and additions to the rules,
however, has been necessitated by the legislative revision in 1951

of Titles 2 and 3 of the Revised Statutes and in 1953 of the remaining Titles of the Revised Statutes so as to delete from the statutes matters of practice and procedure."

The whole program was procedural, not substantive, and in the light of the legislative history it is idle to contend that the Legislature ever held the view that the power to make rules respecting the continuance of terms of a grand jury was substantive in nature, see Foreword to *Title 2A* by Judge Clapp.

2. The defendant next contends that even assuming that the grand jury was duly constituted the indictment found is invalid because by its extended authority the grand jury only had the power to file indictments based on a violation of a gambling statute or alleging misconduct in office of a public official in connection with gambling.

During the period the first three extensions of the grand jury's authority were made the applicable rule provided as follows:

"2:4–8. *Grand Jury, Discharge, Continuance of Term*

(a) A grand jury shall serve until discharged by the Assignment Judge, but no grand jury shall serve for more than 20 weeks unless the Assignment Judge shall order it continued as hereinafter provided. A grand jury shall not be discharged before the expiration of its term of service except for cause. The continuance of such grand jury shall not affect the usual drawing, selecting and serving of further grand juries.

(b) Whenever, by a petition filed for that purpose, it shall be made to appear to the Assignment Judge of the superior court in any county of this state that the grand jury serving in said county at that time has not completed its labors *on any matter or matters as to which it shall have been specially charged previously by such court*, although the ordinary term of its existence shall be about to expire, such judge, upon being satisfied of the necessity therefor, may order that the term of such grand jury be continued beyond the expiration of the time when it ordinarily would cease to function, with the same power to act in relation to such uncompleted matter or matters as if said time had not expired.

(c) The making and filing of such petition, and order made thereon, shall be made within the *term* of court for which such grand jury shall have been drawn, and such order shall provide for a continuance of such grand jury for a definite period of time not exceeding 3 calendar months; provided, however, that if such matter or matters

have not been completed within the time fixed by such order, it shall thereafter be lawful for the assignment judge of the superior court to make a further order, or orders, continuing such grand jury in office, for the purpose aforesaid, for a further term or terms of 3 calendar months each. Any indictment hereafter handed up by such grand jury in relation to the matters set forth in such petition and order shall be as lawful as though the same were handed up within the time for which such grand jury was originally appointed.

(d) The continuance of such grand jury shall in no wise affect the usual drawing, selecting, and serving of further grand juries as provided by law."

That rule was further amended on January 1, 1953 by eliminating from paragraph (b) the italicized provision permitting continuance of the term of the grand jury only for the purpose of completing its labors on matters as to which it had been specially charged. The word "term" in paragraph (c) was changed to "Session." Thus, at the time of the last extended period during which the defendant here was indicted the requirement that only a specially charged grand jury could have its term extended was eliminated. The principal amendment made no change in the power of this grand jury because it originally came within the specifications of the statute.

Clearly then this grand jury had "the same power to act in relation to such uncompleted matters as if its term had not expired" and that any indictment handed up during the period of extension by such grand jury in relation to the matters set forth in the petition for extension and order were as lawful as though handed up during the term for which it was originally appointed. These matters are described as "alleged violations in the gambling laws of Burlington County and misconduct in office of certain public officials in connection therewith."

Our only inquiry need be whether the alleged false swearing of the defendant bore any relation to the matters so set forth in the petition and order. Since that offense by the defendant directly concerned matters over which the grand jury had specific authority it would be unrealistic to say that there was no relation between the two. One language of the

rule must be construed as being indicative of a certain degree of flexibility within the general scope of the subject matter under inquiry else we run the risk of rendering the grand jury powerless to indict without specific express authority. No such thing was ever intended. The construction which the defendant asserts is too narrow.

Nor does the defendant's argument concerning the subsequent amendment of *Rule* 2:4–8 (now *R. R.* 3:3–10), effective September 9, 1953, which removed the requirement that the activities of the extended grand jury were limited to specific matters theretofore engaging its attention, affect our conclusion. The crime charged was within the scope of its original authority.

In passing, it is interesting to note that this defendant has not asserted any prejudice by reason of the fact that this grand jury rather than another handed up the indictment.

3. Turning now to the substantive portion of the case, the only witnesses for the State were the deputy foreman of the grand jury who administered the oath to the defendant, the stenographer who had taken the questions and answers at the grand jury hearing, and George Page, who testified that he had been in the gambling business from 1943 to 1949 and that he knew the defendant for about 25 years, and that in 1949 while he was in the gambling business he had conversations with the defendant at his home concerning his approval to operate a floating crap game. He testified that the defendant had given his approval and told Page that it would cost him $400 a week, and that for a period of 14 to 16 weeks thereafter he gave the defendant $400 for the protection of his gambling game. This witness further testified that the defendant had told him that Trooper Reese was receiving $25 a week out of the protection money. The witness tried to obtain greater benefits for Reese from the defendant, but was told by the defendant to mind his own business. As part of the conversation concerning Trooper Reese there were conversations concerning Trooper Skok. It appears from what Page said that Skok had been receiving $50 per week as pay-off money and the witness was trying to get the

defendant to increase Reese's pay-off to equal Skok's pay-off. The witness further testified to the fact that the defendant and a man by the name of Gergenti, who was attempting to get approval for a gambling game of his own, met in the presence of the witness and discussed the approval and also talked about a debt of $500 owing from a prior pay-off which was not paid.

The defendant denied everything and produced evidence tending to depreciate the credibility of Page and to show that he was motivated by spite and a desire for revenge. The defendant also produced a number of character witnesses who testified to his excellent reputation. The jury returned a verdict of guilty. Thereafter motions to arrest judgment were made which included the grounds in preceding motions to dismiss the indictments. All were denied and the defendant was sentenced to 18 months in the State Prison. The county court allowed a certificate of reasonable doubt and accepted bail and the defendant still remains at liberty pending this appeal.

The defendant urges that the statute under which he was prosecuted penalizes only willful false swearing, that there was no testimony in the case to indicate that the defendant knew that his answers were false, nor was there anything at all by way of testimony or circumstance to justify an inference that he knew his answers were false. He indicates that if this judgment is permitted to stand persons testifying under oath will be at the mercy of their enemies. This argument is without merit because the rule appears to be that the burden cast upon the State by the statute, *i. e.*, that of proving that the statement was made intentionally, knowing that it was false, need not be met by direct evidence. The intent may be inferred from the circumstances surrounding the occurrence, the defendant's demeanor, his intellect, etc. Furthermore, at the trial of the defendant he took the stand and unconditionally reasserted the truth of his previous testimony before the grand jury and made no claim that his answers were given under the belief that they were true at the time they were made; nor did he make any claim or

assertion of lapse of memory or inability to recall. Corroboration or proof by more than one witness to establish the falsity of the testimony or the statements under oath is not required. See *N. J. S.* 2A:131-6. The defendant's intent, like the issue of the credibility of the witness testifying against him, were matters for the proper consideration by the jury. Here both were resolved against the defendant. There was no evidence that the defendant suffered from a faulty memory. His answers were unequivocal. He indicated a rather well-contained recollection of many facts and circumstances that occurred some 10, 15 and 20 years prior to the time of his testimony. See *State v. Doto,* 16 *N. J.* 397 (1954); *State v. Costa,* 11 *N. J.* 239 (1953); *State v. Siegler,* 12 *N. J.* 520 (1953).

The defendant's intent as well as his credibility were again passed upon by the trial judge in ruling on the defendant's motion for a new trial. The trial judge who, like the jury, had the opportunity to see the witnesses and judge their demeanor, took the same view that the jury did of the defendant and denied him a new trial. No reason is advanced for our disturbing the determination first of the jury and then of the trial court.

4. The defendant next contends that the trial court committed reversible error in its charge to the jury in two respects. The first, an error of commission, concerns the following portion of the charge:

"The defendant, John C. Haines, has testified before you to facts which are in direct conflict with the testimony offered by the witness George Page. I say that they are in direct conflict with that testimony. That is my recollection. If my recollection varies from yours, believe me, it is your recollection which controls solely. The question, really simple as it is legally, whether or not this defendant willfully swore falsely before the Grand Jury, simple as that issue may be, reduces itself to a matter of credibility. Which witness are you willing to believe, under the rules that I have announced to you?"

He contends that standing alone and unrelated to the element of intent and the subject of reasonable doubt the jury may

have understood that the only issue for them to decide was merely whether they believed Page or whether they believed the defendant. But an examination of the entire charge indicates that any such confusion as contended was hardly possible. In close sequence the court charged the jury with reference to the element of intent, on credibility and on the subject of reasonable doubt. A criticism aimed at a portion of the charge ought not to be sustained unless it appears that the criticized portion, when read along with the entire context does substantial wrong to the defendant. In *State v. Giberson*, 99 *N. J. L.* 85 (*E. & A.* 1923), the court said at page 93:

"What is here objected to is a portion of the charge severed from its context and from the whole charge, but it must be read in the light of the context and the whole charge. See *State v. Zdanowicz*, 69 *N. J. L.* 619; *State v. Jaggers*, 71 *N. J. L.* 281, 284; *State v. Tapack*, 78 *N. J. L.* 208, 211."

The second complaint, an error of omission, concerns an incident that occurred when the State called Anthony Marinella to testify on its behalf. This witness refused to answer most of the questions put to him by the Deputy Attorney-General, invoking his constitutional privilege against self-incrimination. In connection with this incident the court charged the jury as follows:

"Another incident occurred during the trial of this case, and I want to speak to you about that. The State called the witness Marinella into Court to testify before you, and Mr. Marinella declined to answer. He claimed a Constitutional privilege against incriminating himself, and as I advised him, in some cases he is entitled to claim that privilege and in other cases he may not be. That claim to privilege against incriminating that prospective witness and the fact that he did not testify likewise is not to be speculated upon by you. What he may have said, what he might have said, is not to be speculated upon by you in that it might have something to do with this defendant. I say to you that his claim not to incriminate himself is a claim in his behalf and has absolutely nothing to do with the person involved in this proceeding."

The defendant's contention that the trial court should have charged that the jury should not infer from the refusal of

this witness to testify that his testimony would have been unfavorable to the defendant indicates nothing more than a disagreement with the manner in which the trial judge expressed this idea to the jury. The charge was adequate.

The record does not indicate that any objection was taken to either of these portions of the charge at the trial. To be permitted to prevail with this argument here he must show that a very definite error has been committed affecting substantially the rights of the defendant and that an unjust result was brought about thereby. See *R. R.* 1:5-1, *State v. Picciotti*, 12 *N. J.* 205 (1953); *State v. Kaufman*, 31 *N. J. Super.* 225 (*App. Div.* 1954). No such "plain error" exists here.

5. The next error urged is that the verdict was against the weight of the evidence because the entire proof by the State against the defendant came from the lips of one witness and that this witness was so discredited that a reasonable doubt as to the guilt of the defendant was created. We see no merit to this argument.

*N. J. S. A.* 2A:131-6 provides in connection with the offense of false swearing that:

"Corroboration or proof by more than 1 witness to establish the falsity of testimony or statements under oath is not required in prosecutions under this article. It shall not be necessary to prove, to sustain a charge under this article, that the oath or matter sworn to was material, or, if before a judicial tribunal, that the tribunal had jurisdiction."

The responsibility for determining whether guilt of the defendant has been proven beyond a reasonable doubt rests with the jury, and our review upon appeal is aimed only at correcting injustice resulting from obvious failure by the jury to perform its function. *R. R.* 1:5-1. The weight of the evidence is not determined by the number of witnesses testifying on one side as opposed to the number testifying on the other. There was sufficient evidence here. The issue of credibility was for the jury to decide, not for us. See *State v. Picciotti, supra.* Unless there is an indication that

the verdict was the result of mistake, partiality, prejudice or passion on the part of the jury it ought not be disturbed by us.

6. Lastly, the defendant urges that the trial court should have granted a new trial in the interests of justice because of the incident involving the witness Marinella, who was called by the State and refused to testify. The defendant claims that the entire incident was very unfavorable to him and unfair, and the damage done not overcome by the insufficient charge of the court to the jury. We have already reached a conclusion in connection with this incident and nothing urged here requires that it be changed.

The prosecutor had good reason to believe that this witness, Marinella, could furnish testimony which would strengthen the State's case against the defendant. He had no way of predetermining whether the witness would actually invoke his privilege. He was obliged to call him to the stand and hear the claim of privilege asserted or suffer criticism for the failure to perform his duty.

The following language in *State v. Witle*, 13 *N. J.* 598 (1954), *certiorari* denied 375 *U. S.* 951, 74 *S. Ct.* 675, 98 *L. Ed.* 1097 (1954), rehearing denied 374 *U. S.* 394, 74 *S. Ct.* 849, 98 *L. Ed.* 1127 (1954), we find most applicable:

"In its nature the case made by the State involved witnesses of unsavory character, and the State's *bona fide* efforts to adduce relevant evidence from such witnesses cannot be denounced as incompatible with fair play. * * *

* * * * * * * *

Of course, first principles dictate that the essentials of a fair and impartial trial inherent in due process be accorded the accused. Vide *Brown v. State of Mississippi*, cited *supra* [297 *U. S.* 278, 56 *S. Ct.* 461, 80 *L. Ed.* 682], and to that end, notice may be taken of 'plain errors affecting substantial rights of the defendant, although they were not brought. to the attention of the trial court.' *R. R.* 1:5–1, formerly *Rule* 1:2–19. But there was no error here calling for the application of this rule.

The accused plainly did not suffer prejudice by the interrogation offered as ground for a mistrial. The questions elicited no adverse testimony. * * * There is no sound basis for the conclusion that the jury were misled. It is fairly to be presumed that the jury had the intelligence and understanding to follow the direction of the

court to be guided only by the evidence actually adduced in resolving the issues within their province. * * * By rule of court, error in the denial of any matter resting in discretion, or in any other ruling or order made in the course of the trial, is not cause for reversal unless it is made to appear from the entire record of the trial proceedings that the accused 'thereby suffered manifest wrong or injury.' * * * There is no rational basis for concluding that, in what was done here, the accused suffered detriment in maintaining his defense upon the merits."

The judgment of conviction is affirmed.

WILLIAM J. BRENNAN, JR., J. (dissenting). I would reverse the conviction and remand for a new trial. I think there was error in the charge to the jury, and also in the failure of the trial judge to grant a new trial on the ground that the verdict was against the weight of the evidence.

The defendant was not guilty of the offenses charged unless the proofs supported a finding beyond a reasonable doubt that if he swore falsely the false swearing was willful. The jury might accept the testimony of the witness Page as true and reject the defendant's denials as untrue, but defendant was nevertheless not to be convicted unless the jury could find beyond a reasonable doubt that defendant's untruths were willful lies. Yet the trial judge charged the jury that the guilt or innocence of the defendant depended upon "which witness are you willing to believe," that is, as between Page and the defendant. I find nothing whatever elsewhere in the charge which tempers this flat and plain instruction, clearly erroneous and fraught with patent prejudice to the defendant. In substance, the jury was told that the guilt of the defendant was established if they concluded that Page was to be believed. The only correct instruction was that guilt could be found, even if Page was believed, only if defendant swore falsely before the grand jury and did so willfully.

The issues under the third count were whether defendant willfully swore falsely in denying categorically before the grand jury, as he did when he took the stand at his trial, that he had ever received any money from Page for any purpose, or had ever discussed with Page the receipt of moneys by an officer of the State Police for protection pur-

poses, or had ever had a conversation with Page concerning the operation of a floating crap game in Burlington County.

The single issue under the fourth count was whether he willfully swore falsely in his categorical denial that he knew one Joseph Girgenti.

The only evidence adduced by the State to support the charges was the testimony of Page. Although a conviction for the crime of false swearing may rest upon the testimony of a single state witness who says that the defendant did or said the things which the defendant under oath denies he did or said, certainly on a motion to set aside a verdict of guilt as against the weight of the evidence it should clearly appear that the testimony of the single witness had such quality that it was not wholly unreasonable for 12 jurors to believe it. I do not suggest that a verdict of guilt should be upset merely because the trial judge may not believe the witness, but only that the trial judge should not hesitate to upset the verdict if the testimony has such a hollow ring that the jury's reliance upon it to support its verdict strikes him as so unreasonable as to justify the conclusion that the jury was not impartial, but that the verdict was the product of bias, passion or prejudice. By that test I think the trial judge here erred in not setting aside this verdict of conviction.

Page out of his own mouth convicted himself as a shady character not averse to lying in even unimportant matters, given to the use of an alias, and living by his wits. He and the defendant were brought up in the same locality and had known one another most of their lives. Page was arrested January 31, 1952 in Hamilton Township, Mercer County, on a charge of issuing bad checks. At his request a Hamilton police officer permitted him to telephone the defendant for help in arranging bail. Defendant refused the help and, according to the police officer, Page said to defendant, "O. K., you son-of-a- . . ., I'll fix you. I'll get even." Page admitted telephoning defendant from Hamilton Township, but denied making the remarks attributed to him by the officer. I find it highly significant that it was less than three weeks

later that Page executed an affidavit which was published in the *Florence Township Post* on February 22 stating that he wished "to denounce" "public officials" for violating their public trust. The gist of the affidavit, as the *Post* summarized it, was that Page "accuses certain law enforcement officials of having accepted graft from members of the county gambling fraternity." Page named names, charging high county officers then in office with having received sums ranging from $300 to $1,000 weekly for protection of a gambling operation at Maple Shade. Maple Shade is not in Mansfield Township where defendant was magistrate, but is some miles removed. Yet Page's affidavit charged defendant with receiving $1,600 weekly for protecting the Maple Shade game, 60% more than the amounts allegedly received by any of the other officials named whose positions of authority were in fact county wide. Neither Page nor the State made any attempt to show at the trial how defendant was in a position, official or political, to provide the protection allegedly bought from him, not for protection of gambling in Mansfield Township, because it is not charged that games were carried on there, but at other places in Burlington County distant from Mansfield Township. Page's testimony on this point is illuminating:

"Q. What did Mr. Haines have to do with the operation of a game in some township outside of the township in which he lived? A. I don't know what he would have to do outside of Mansfield Township, but he was known as being the boss of Burlington County as far as anything like this concerns.

Q. Well, who told you anything like that? A. Well it was known throughout the syndicate and by himself.

Q. Who was it told you that he was the boss of Burlington County? A. I said of operating crap games or anything like that, for getting an OK and things like that, such as that.

Q. Well, I will come back to my question. Who told you that? A. Who told me?

Q. Yes. A. Well, if you want an OK to do anything, you used to have to go to him to get it.

Q. My question is, who told you that he was the boss of Burlington County so far as anything that you have mentioned? A. Well, I don't know who told me. I went to him to get OK's for myself. Is that enough?"

The suspicion that Page included defendant in his charges out of spite for defendant's refusal to help him is heightened by the evidence that defendant, not a lawyer, but a caretaker of a farm which was formerly a brickyard where he had worked, enjoyed an excellent reputation according to character witnesses who testified for him. The witnesses were neighbors, dairy farmers, a lawyer who is the present acting magistrate, and local and township officials. It is significant that the Attorney-General made no attempt to press any of these witnesses as to adverse matters bearing upon defendant's reputation as a "law-abiding citizen" to which they all testified.

My study of the record persuades me that Page's testimony so far lacks the ring of truth as to make wholly unreasonable the jury's reliance upon it as establishing defendant's guilt beyond a reasonable doubt. I think that in the circumstances the trial judge should have set aside the verdict as contrary to the weight of the evidence.

*For affirmance*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING and JACOBS—4.

*For reversal*—Justices HEHER, OLIPHANT and BRENNAN—3.